# CROSS *v.* ALLEN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF OREGON.

No. 23.   Argued October 13, 1891. — Decided November 16, 1891.

The transfer of an overdue note and mortgage for a valuable consideration
to a *bona fide* purchaser, is not a' collusive transaction which prevents
the transferee from maintaining an action upon them, under the provi-
sions of the act of March 3, 1875, 18 Stat. 470, c. 137, § 1; although made
to make a case to be tried in a Federal Court.

It being conceded that this case comes within the rules laid down in *Ackley
School District* v. *Hall*, 113 U. S. 135, and in *New Providence* v. *Halsey*,
117 U. S. 336, this court adheres to the doctrines enunciated in those
cases.

The payment by the principal debtor, after the death of his wife, of interest
upon a note, signed by him alone, but secured by a mortgage upon her
separate real estate executed by her, operates in Oregon to keep alive the
lien upon the property for the security of the mortgage debt, as against
the statute of limitations of that State.

So long as demands secured by a mortgage are not barred by the statute of
limitations, there can be no laches in prosecuting a suit upon the mort-
gage to enforce them.

While adhering to the rule that any material change in a contract made by
the principal without the assent of the surety, discharges the latter, the
court is of opinion that the changes set up in this case as a reason for
the discharge of the property of the surety were not material and did not
operate to discharge it.

Under the constitution and laws of Oregon, in force when these contracts
were made, a married woman could bind her separate property for the
payment of her husband's debts.

This court is bound to assume that decisions of state courts on matters of
state law have been made after thorough consideration, and that they
embody the deliberate judgment of the court.

THE case is stated in the opinion.

*Mr. John H. Mitchell* for appellants.

*Mr. C.  S. Wood* for appellees.   *Mr. George H. Williams*
was with him on the brief.

MR. JUSTICE LAMAR delivered the opinion of the court.

This was a suit in equity to foreclose two mortgages of real estate in Oregon. The case is this: On the first of November, 1871, Thomas Cross of Salem, Oregon, gave his note to the firm of Allen & Lewis of Portland in that State, for $30,-000, payable in three years, with interest at 10 per cent per annum from date; and to secure its payment he and his wife, Pluma F. Cross, on the same day executed a mortgage in favor of that firm upon fifteen parcels of agricultural land in that State, numbered respectively from "one" to "fifteen," and containing over 3000 acres. Parcels "14" and "15," containing about 211 acres, were the separate property of Pluma F. Cross, while the remainder of the property belonged to Thomas Cross. On January 23, 1872, they gave another mortgage to the same firm upon the same property embraced in the preceding mortgage and certain town lots in Salem, to secure the payment of another note, of even date therewith, given by said Thomas Cross to said firm, for $10,000, due in one year, and bearing twelve per cent interest from date.

On the 16th of September, 1872, before either note became due, Pluma F. Cross died, but there was never any administration of her estate.

Nothing was paid on either of the notes when they became due, but on the 22d of January, 1876, Thomas Cross conveyed the premises embraced in the mortgages to C. H. Lewis of Portland, one of the members of the firm to which the mortgages were given. This conveyance, though absolute in form, was in fact, and was intended to be, upon the following trusts: (1) that the grantee should, at the cost and expense of the lands, keep them in cultivation, or lease or let them, or any part of them; (2) that he should sell and dispose of the crops, collect the rents, and, after deducting all necessary and proper charges and expenses connected therewith and incident thereto, apply the net proceeds thereof upon the mortgage debts; and (3) that he might, with the consent of said Thomas Cross, sell any portion or portions of said premises either at public or private sale, and apply the net proceeds of such sales toward the satisfaction of the mortgage debts.

During the year 1876, Lewis, with the assent of Thomas

Cross, had a large portion of the lands surveyed and divided into 40-acre tracts, and between October 14 and November 15 of that year, in pursuance of the trust contained in the deed to him, he sold at private and public sale over 800 acres thereof for $8593.18, which was $268.16 more than their appraised value, the net proceeds of which sum, amounting to nearly $7000, after payment of certain items owing by Cross, were credited upon the aforesaid indebtedness, and the firm afterward executed a release to Cross discharging the lands thus sold from the lien of the mortgages.

On the 5th of February, 1884, Thomas Cross died; and on the 8th of July following the claim on the notes and mortgages was presented to the administrators of his estate and was rejected by them. Soon afterwards, the notes and mortgages were assigned by the firm to L. H. Allen, one of the members thereof, a resident of San Francisco, California, who, on the 6th of August, 1884, brought this suit to foreclose the mortgages and establish and enforce their lien on all the property embraced in them.

A number of persons, including the present appellants, E. C. Cross and Frank R. Cross, (who are the children of Thomas Cross, by his wife Pluma F. Cross,) were made parties defendant to the bill. Frank R. Cross, being a minor, defended by his guardian *ad litem*, E. C. Cross. The other defendants were the heirs at law of Thomas Cross, deceased, the administrators of his estate, and said C. H. Lewis.

Upon the filing of the bill, it appearing that the mortgaged property would be insufficient to pay the indebtedness, a receiver was appointed to collect the rents and manage the property generally, pending the foreclosure proceedings.

On the 21st of January, 1885, an order was entered in the court below that the bill be taken as confessed by all of the defendants, except Edwin C. Cross and Frank R. Cross; and they, on the 10th of March following, filed their joint and several answer to the bill.

The defences set up in this answer were, substantially: (1) laches on the part of complainant and staleness of his claim; (2) the sale of certain portions of the mortgaged prop-

erty by Lewis aforesaid was for a grossly inadequate sum, whereby the heirs of Pluma F. Cross suffered loss and damage; (3) the arrangements between Thomas Cross and his transferee, Lewis, were equivalent to a variation of the terms of the mortgage contracts, and amounted to an extension of time to Thomas Cross, the original debtor, whereby the mortgages, as respects the property of Pluma F. Cross, became ineffective, she being in law a mere surety for her husband; (4) the transfer of the claims in suit to the complainant, L. H. Allen, was not made in good faith, but solely for the purpose of giving jurisdiction to the Federal court, he being a citizen of California, while the other member of the firm was a citizen of Oregon, and most of the defendants also were citizens of the latter State; and (5) the mortgages, as respects the property of Pluma F. Cross, were absolutely void, because, under the constitution and laws of Oregon at the date of those contracts, a married woman had no authority whatever to bind her separate property for the payment of the debts of her husband.

There was a demurrer to those portions of the answer referring to the inadequacy of consideration arising from the sales made by Lewis, of the property mortgaged on the ground of impertinence; but it was overruled with leave to complainant to amend his bill, (*Allen* v. *O'Donald*, 23 Fed. Rep. 573,) which he did, setting out in detail a description of each tract of land sold by Lewis, together with the price paid for each and the names of the respective purchasers, and alleging that the price paid in each instance was equal to the value of the property sold.

By stipulation it was agreed that the original answer should stand as the answer to the amended bill; and, after replication filed, the case went to trial on the pleadings and certain stipulations as to the most material facts, but one witness, Mr. Lewis, being examined. His testimony was taken only upon the question of the *bona fides* of the transfer by the firm of Allen & Lewis to Allen, the complainant, and went to sustain that transaction, although he admitted that one of the purposes of that transfer was to make a case for the jurisdiction

of the Federal courts. The trial resulted in a decree of foreclosure against the property of Pluma F. Cross, the Circuit Court finding in favor of the complainant on every material issue in the case. 28 Fed. Rep. 17.

Afterwards a motion for rehearing was made and argued mainly upon the question whether there had, in law, been an extension of time to the principal debtor, Thomas Cross, whereby the surety became discharged. The motion was overruled, the court below adhering to its original decision and decree. 28 Fed. Rep. 346. The case was then appealed to this court. Since the appeal here was filed the complainant has died, and his administrator is now representing his estate.

There are ten assignments of error, which, as applied to the facts of the case, involve five different questions for consideration, viz. (1) the *bona fides* of the assignment and transfer of the notes and mortgages by the firm to Mr. Allen, the complainant, and therein the jurisdiction of the court below; (2) the negotiability of the notes by the *law merchant;* (3) laches on the part of the complainant and staleness of his claim, and the statute of limitations of the State of Oregon with relation to such matter; (4) whether the conveyance to Lewis of all the lands embraced in the mortgages and the subsequent transactions in relation thereto amounted to an extension of time to Thomas Cross, the principal debtor, and a substantial change in the contract of indebtedness between him and the creditors, whereby the surety became released; and (5) whether, in any event, under the constitution and laws of Oregon in force when the mortgages were made, a married woman could bind her separate property for the payment of her husband's debts.

With reference to the first question, as above classified, we deem it sufficient to say that, upon the evidence of Mr. Lewis himself, (which was all the evidence in the case,) the court below was correct in finding that the sale and transfer of the notes to the complainant, Allen, was a *bona fide* transaction. He testified, in substance, that his pecuniary interest in the claim against Thomas Cross ceased at the time the transfer was made, at the same time stating the consideration for the

transfer. He also stated that one of the purposes of the transfer of the notes and mortgages was to make a case that could be tried in the Federal court; and it is upon this feature of his testimony that the argument is based that the transfer was not *bona fide*, and that the court below did not have jurisdiction of the case.

We cannot coincide with that view. The transfer of the notes and mortgages having been made for a valuable consideration, and the pecuniary interest 'of the transferrer in the subject matter of the transfer having thereby terminated, it makes no difference that by such transaction the transferee acquired the advantage of suing in the Federal court. This suit, so far as the record shows, is for the sole and exclusive benefit of the complainant, Allen. Lewis has no interest in the result of it. The jurisdictional statute of March 3, 1875, 18 Stat. 470, c. 137, warranted the Circuit Court in entertaining jurisdiction of the case. There is nothing in the facts and circumstances relating to this transfer to bring the case within the class of collusive cases referred to in section 5 of that act, and require its dismissal at the hands of the Federal court, on jurisdictional grounds. *Farmington* v. *Pillsbury*, 114 U. S. 138; *Lanier* v. *Nash*, 121 U. S. 404, 410.

But it was contended that the notes were not negotiable by the law merchant, because they were long past due when they were transferred, and that, therefore, under section 1 of the aforesaid act of March 3, 1875, the Federal court could not take jurisdiction of the case. The provision of the statute referred to reads as follows: "Nor shall any Circuit or District Court have cognizance of any suit founded on contract in favor of an assignee, unless a suit might have been prosecuted in such court to recover thereon if no assignment had been made, except in cases of promissory notes negotiable by the law merchant and bills of exchange."

Counsel for appellants concedes, however, that this question has been determined adversely to his contention by this court in *Ackley School District* v. *Hall*, 113 U. S. 135, and also in *New Providence* v. *Halsey*, 117 U. S. 336. Inasmuch as those cases are decisive upon the point under consideration, a mere

reference to them is all that is essential in this connection. We still adhere to the doctrines therein enunciated, and this assignment of error is, therefore, without force.

This leads up to the next questions in the case, viz. laches, staleness of claim and the statute of limitations of the State of Oregon.

Pluma F. Cross having executed a mortgage upon her separate property to secure the debt of her husband, became, as to that debt, a surety. She did not become personally bound for the payment of the debt, but her property mortgaged was bound. As such surety, she was entitled to all the rights and privileges of a personal surety, and would be discharged by anything that would discharge a surety who was personally bound. *Spear* v. *Ward*, 20 California, 659, 674; *Gahn* v. *Niemcewicz*, 11 Wendell, 312, 326; *Vartie* v. *Underwood*, 18 Barb. 561, 563; *Bank of Albion* v. *Burns*, 46 N. Y. 170, 175; Bishop, Law of Married Women, § 604; Brandt on Suretyship and Guaranty, § 22; Jones on Mortgages, § 114. And the appellants, having succeeded by inheritance to the estate and interest of their mother, occupy the same position as she would have done had she lived. *Bank of Albion* v. *Burns, supra.* Her death did not discharge her estate from the lien which she created upon it, nor did it vest in her heirs an estate which she had conveyed away as a security for her husband's debts. *Miner* v. *Graham*, 24 Penn. St. 491, 495.

It is by the application of these rules to the facts of this case that the liability of the surety is to be determined. Under the Civil Code of Oregon, the period of limitation for promissory notes is six years; and it is argued that, as the notes in this controversy were not sued on until more than six years from the dates when they respectively became due, an action on them would not lie, notwithstanding the fact that the maker made payments of interest upon them from time to time. The facts in this matter are these: The first note was dated November 1, 1871, payable in three years. Consequently it matured November 4, 1874, and, if no payment of interest had been made, the bar of the statute would have been complete November 4, 1880; but in 1877, 1878,

1880 and on the 22d of December, 1881, partial payments of interest were made on the note by Thomas Cross, or in his interest. The second note was dated January 23, 1872, payable in one year, and consequently matured January 26, 1873. The bar of the statute on this note would have been complete January 26, 1879, had no interest been paid upon it in the meantime. It is averred in the bill and admitted in the answer that the interest on this note was paid in full up to January 25, 1879, one day before the completion of the bar; and another payment of interest was made February 1, 1883. This suit was commenced August 6, 1884. Consequently it is to be observed that there never was a period of six years between the making of either note and the bringing of this suit that no payments were made upon them. Section 25 of the Code of Civil Procedure of Oregon provides as follows: "Whenever any payment of principal or interest is made on an existing contract, whether it be bill of exchange, promissory note, bond or other evidence of indebtedness, after the same becomes due, the limitation shall commence from the time the last payment was made."

It is conceded that the payments of interest above referred to served to keep the debt alive, so far as the principal was concerned; but it is argued that they did not do so with reference to the surety, Pluma F. Cross, or her estate, especially in view of the fact that she died before the maturity of either note, and also in view of the fact that she never signed the notes at all, but became a legal surety by reason of having signed the mortgages.

This presents a question worthy of much consideration. At common law, a payment made upon a note by the principal debtor before the completion of the bar of the statute, served to keep the debt alive, both as to himself and the surety. *Whitcomb* v. *Whiting*, 2 Doug. 652; *Burleigh* v. *Stott*, 8 B. & C. 36; *Wyatt* v. *Hodson*, 8 Bing. 309; *Mainzinger* v. *Mohr*, 41 Michigan, 685.

That is the rule in many of the States of this Union — in all, in fact, where it has not been changed by statute. *National Bank of Delavan* v. *Cotton*, 53 Wisconsin, 31; *Quimby*

v. *Putnam*, 28 Maine, 419. At common law and in those of the States where the common law rule prevails, a distinction is made between those cases in which a part payment is made by one of several promisors of a note before the statute of limitations has attached and those in which the payment is made after the completion of the bar of the statute; it being held in the former that the debt or demand is kept alive as to all, and in the latter, that it is revived only as to the party making the payment. *Atkins* v. *Tredgold*, 2 B. & C. 23; *Sigourney* v. *Drury*, 14 Pick. 387, 391; *Ellicott* v. *Nichols*, 7 Gill, 72, 85, and cases cited. The reason of this distinction lies in the principle that, by withdrawing from a joint debtor the protection of the statute, he is subjected to a new liability not created by the original contract of indebtedness.

There is no statute of Oregon, so far as we have been able to discover, changing the common law rule of liability with reference to sureties. Consequently, under the admitted facts of this case, it must be held that the statute of limitations of the State never operated as a bar to the enforcement of the original demands against both the principal and the surety.

Nor do we think the death of the surety before either of the demands matured makes any difference, in principle, where, as in this case, the liability is not of a personal nature, but is an incumbrance upon the surety's property. We are aware that there is authority holding that payment of interest by the principal debtor, after the death of the surety, but before the statute of limitations has run against the note, will not prevent the surety's executors from pleading the statute. *Lane* v. *Doty*, 4 Barb. 530; *Smith* v. *Townsend*, 9 Rich. (S. C.) Law 44; Byles on Bills, sec. 353; 2 Parsons on Notes and Bills, 659, and note *t*. But we know of no authority extending this rule to the representatives of a deceased surety whose liability was *not* personal but upon property mortgaged. On the contrary, the cases of *Miner* v. *Graham* and *Bank of Albion* v. *Burns*, *supra*, seem to recognize the doctrine which we are inclined to accept. We conclude, therefore, that the contract of suretyship in this case was not terminated by the death of the surety before the maturity of the indebtedness.

Opinion of the Court.

The question of laches and staleness of claim virtually falls with that of the defence of the statute of limitations. So long as the demands secured were not barred by the statute of limitations there could be no laches in prosecuting a suit upon the mortgages to enforce those demands. The mortgage is virtually a security for the debt, and an incident of it. *Ewell* v. *Daggs*, 108 U. S. 143. And it is immaterial that the failure to sue upon the demands may have resulted injuriously to the surety, so long as there was no variation in the original contract of suretyship, either as respects a new consideration or a definite extension of time; since it is a familiar principle of law that the mere omission or forbearance to sue the principal without the request of the surety will not discharge the surety. 1 Parsons on Notes and Bills, 236, 238, and notes.

Did the conveyance by Cross to Lewis of the lands mortgaged and the subsequent transactions in relation thereto, before set out, amount to an extension of time for a definite period, or vary the terms of the original contract of suretyship? We think not. In this connection we are not unmindful of the rule that any material change in the contract on which he is a surety, made by the principal parties to it, without his assent, discharges the surety, even though he may be benefited by such change; the reason being that he has not assented to the contract in its altered form, and has a right to stand upon the very terms of his undertaking. *Reese* v. *United States*, 9 Wall. 13, 21; 1 Parsons on Notes and Bills, 239. But in this case there was no extension of time for a definite period, no new consideration passed, nor was there any material alteration of the terms of the original contract. The rights of the surety remained the same after those transactions as they were before. The transactions in this matter were at farthest a more convenient method of enforcing payment of the original demand, and possibly may be considered as amounting to an additional security. But that is all. Even that would not release the surety. 1 Parsons on Notes and Bills, 245, and notes. The mortgage security was not lessened at all, for the net proceeds arising from the sale of those portions of the property on which the mortgages were released

were applied to the diminishing of the debt. That property, too, seems to have been sold for more than its appraised value, and there is nothing in the record to show that, under the circumstances of the case, it was worth any more. True, the record states that there are five persons who would testify that in 1876 it was worth fifty per cent more than it was sold for. But as was well remarked by the court below, it is not to be expected that mortgaged property, when sold on account of the default of the debtor, will bring what it would at ordinary private sale; and if the five persons mentioned had been asked what the property sold would have brought, *under such circumstances*, it may be they would not have differed much from the appraised value of it. There does not seem to have been any fraud whatever in this whole transaction. In fact, none is charged. The sales were made with the assent of the owner, Thomas Cross, were open and without concealment or deception, and were for a fair value. The whole affair bears the impress of good faith, and we are not warranted in saying it was otherwise.

The only remaining question is, whether, under the constitution and laws of Oregon in force at the time these contracts were made, a married woman could, in any event, bind her separate property for the payment of her husband's debts. Without discussing this question upon the merits, it is sufficient to say that the Supreme Court of the State has decided it in the affirmative in at least two separate cases, *Moore* v. *Fuller*, 6 Oregon, 272, 274, and *Gray* v. *Holland*, 9 Oregon, 512; and it is not our province to question such construction. Being a construction by the highest court of the State of its constitution and laws, we should accept it.

It is said, however, that the cases just cited were decided without having been fully argued and without mature consideration of this question, upon the mistaken assumption that it had been previously decided in the affirmative by the Supreme Court of the State, and, therefore, they have not become a rule of property in the State and are not binding upon this court. We are not impressed with this contention. Such argument might with propriety be addressed to the Supreme

Court of the State, but it is without favor here.  We are bound to presume that when the question arose in the state court it was thoroughly considered by that tribunal, and that the decision rendered embodied its deliberate judgment thereon.

There are no other questions in the case that call for especial consideration, as the foregoing virtually disposes of all of them.  Upon the whole case we are of the opinion that the decree of the court below was correct, and it is

*Affirmed.*

The CHIEF JUSTICE and MR. JUSTICE GRAY did not hear the argument or take part in the decision of this case.