### STEINBERG v. TORO.
### Civ. No. 5847.

United States District Court
D. Puerto Rico, San Juan Division.

Feb. 26, 1951.

---

5. 2 Cir., 184 F.2d 24. Two of the judges here sat in the Beiships case.

6. D.C.E.D.N.Y., 5 F.Supp. 622.

7. In re Agwi Nav. Co., D.C.S.D.N.Y., 9 F.Supp. 501.

8. Dowling v. Isthmian S. S. Corp., 3 Cir., 184 F.2d 758.

9. Mulligan v. United States, note 1 supra.

10. Note 5 supra.

Joshua Hellinger, San Juan, Puerto Rico, for plaintiff.

Orlando Antonsanti, San Juan, Puerto Rico, for defendant.

ROBERTS, District Judge.

This is an action to recover damages for breach of contract. The defendant, Gerardo Arroyo Toro, owner of a leather tannery located in Mayaguez, Puerto Rico, entered into a contract on January 21, 1949, with Atlas Products Corporation, a corporation organized and existing under the Laws of Puerto Rico. This contract provided, in substance, that the Corporation was to undertake to manage and operate the defendant's tannery; to purchase

the entire output of leather processed therein; and, under enumerated terms and conditions, was to have an option to purchase up to a half interest in the tannery. The defendant, on his part, was to make available and turn over to the Corporation the entire plant and industrial facilities of the tannery; to make certain improvements in the premises and to maintain the properties and equipment; to personally perform certain designated duties and to permit the use of his name in the operation of the tannery for good will purposes; and, to furnish, by April 12, 1949, working capital in the amount of $50,000.

In April of 1950, the plaintiff here, Robert Steinberg, brought this action, alleging in his complaint that plaintiff "is a resident of the State of New York" and that defendant "is a resident of Puerto Rico"; the making and a breaching of the contract; and, that Corporation has "assigned to plaintiff its right, title and interest in and to said contract". It appears from answers made by plaintiff to interrogatories propounded by defendant that plaintiff is a stockholder, director and president of the Corporation; that the alleged assignment of the contract to plaintiff by Corporation was made in writing in the city of New York on March 8, 1949; and, that the consideration therefor was "security for advances of funds theretofore made or which might thereafter be made by me on behalf of Atlas Products Corporation, in order to enable said Corporation to perform its obligations under its contract with Gerardo Arroyo Toro, and for services rendered by me in assisting the Corporation in carrying out its said obligations."

The defendant has moved to dismiss the complaint, asserting as grounds therefor "that no such assignment of a contract was made by the Atlas Products Corporation to Robert Steinberg" and that "the claim of said Atlas Products Corporation has been collusively assigned to the plaintiff here for the purpose of conferring jurisdiction upon this court". In support of his asserted grounds for dismissal, defendant submitted in evidence at the hearing on the motion several letters, all dated after March 8, 1949, the date upon which the assignment of the contract to plaintiff by Corporation was allegedly made. Several of these letters, written on letterheads of the Corporation and signed by plaintiff on behalf of the Corporation, contained directions relating to the operation of the tannery; orders concerning the employment, wages and duties of employees of the tannery; requests that defendant furnish the working capital provided for in the contract; and, intimations that litigation might ensue if the requests were not complied with by defendant. Others of these letters written on letterheads of an attorney in representation of the Corporation, contain demands that the plaintiff comply with the provisions of the contract; recitals of damage to the Corporation in consequence of defendant's failure to so comply; and, proposals relating to the negotiation of a new contract between Corporation and the defendant. Also submitted in evidence by the defendant was a copy of a draft of an agreement which, by its terms, indicated that it was to be made between defendant and the Corporation as a substitute agreement for the contract of January 21, 1949.

Upon hearing on the defendant's motion to dismiss, plaintiff submitted no evidence in support of his jurisdictional allegations, but contended that the assignment of the contract to him by Corporation was a bona fide assignment and, therefore, if all other jurisdictional requirements are met, he may maintain his action in this court whether or not his assignor, the Corporation, could have maintained such an action.

In substance, the defendant's motion to dismiss asserts that plaintiff was, through the alleged assignment of March 8, 1949, collusively made a party to this action to invoke the jurisdiction of this court, and that, therefore, under the provisions of Section 1359 of Title 28, U.S.C.A., this court is deprived of jurisdiction to entertain this suit. The defendant's motion raises a clear question as to the existence of jurisdictional facts supporting the plaintiff's allegations of jurisdiction. The statute upon which the defendant relies, 28

U.S.C.A. § 1359, June 25, 1948, c. 646, 52 Stat. 935, reads as follows: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

Said Section 1359 represents a recent revision of the law applicable in cases wherein assignees or other transferees seek to invoke the jurisdiction of the federal courts. Its effect has been to simplify judicial determination of the right of such assignees or transferees to invoke federal jurisdiction. Prior to its enactment in 1948, there were two statutes which could effect the right of an assignee or transferee to bring an action in the federal courts. These were contained in Section 41(1) and Section 80 of Title 28, U.S.C., March 3, 1911, C. 231, secs. 41(1), 37, 36 Stat. 1091, 1098.

Said Section 41(1) provided generally that an assignee, in order to invoke the jurisdiction of the federal courts, would be required to show both jurisdiction to support his own case and that there would have been jurisdiction if the assignor had brought the action instead of the assignee. Thus under the former Section 41(1), if his assignor or transferor could not have successfully invoked the jurisdiction of the federal courts if he had brought the action instead of the assignee or transferee, the assignee or transferee was not permitted to invoke such jurisdiction (save in certain specified cases which have no bearing on the question here) even though the assignment or transfer was bona fide.

On the other hand, said Section 80 was specifically applicable to cases involving an improper or collusive invoking of federal jurisdiction and required the District Courts to dismiss suits commenced therein when "it shall appear to the satisfaction of the said dictrict court, at any time after such suit has been brought * * * that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this chapter, the said district court shall proceed no further therein, but shall dismiss the suit * * *". Thus, under the former Section 80, if the assignee or transferee was improperly or collusively made a party by the assignment or transfer, for the purpose of conferring on him status that would enable him to invoke the jurisdiction of the federal courts, the court was required to dismiss the action forthwith.

The enactment of said Section 1359, has had the effect of narrowing the area wherein it is required to judicially determine the right to invoke federal jurisdiction to those cases involving an improper or collusive making of parties, by assignment or otherwise, for the purpose of invoking such jurisdiction. The jurisdictional limitation of former Section 41(1) has been eliminated and a bona fide assignee or transferee may now maintain an action in the federal courts whether or not his assignor or transferor could have done so. However, the mandate of former Section 80, that jurisdiction be withheld from parties improperly or collusively made for the purpose of invoking such jurisdiction, is continued in full effect by Section 1359.

Therefore, it is true, as plaintiff contends, that when an assignment or transfer is bona fide, other required jurisdictional grounds being satisfied, the assignee or transferee may maintain an action in the federal courts and it is immaterial whether or not his assignor or transferor could have done so. But, in view of the jurisdictional limitation of Section 1359, a defendant is not precluded from challenging asserted jurisdiction on the ground that a party has been collusively made for the purpose of invoking federal jurisdiction. And that is the precise question which has been raised in a proper manner by the defendant's motion to dismiss in the instant case and it presents the issue that must here be resolved.

It becomes appropriate then to inquire into the extent of the court's authority to determine the real character of the transfer under consideration for the purpose of ascertaining whether the plaintiff

should be permitted to invoke its jurisdiction. Congress, in conferring jurisdiction upon the federal courts to entertain suits between citizens of the different states, intended that when a citizen of one state sought to enforce or protect a right against a citizen of another state, he should be entitled to invoke the jurisdiction thus conferred upon the federal courts as a matter of right. When a suitor comes within the requirements of diversity jurisdiction, he should be able to successfully invoke it, whatever his reasons, and a refusal to exercise jurisdiction in such cases would thwart the very purpose for which such jurisdiction was conferred. However, the federal courts are courts of limited jurisdiction, and it is elementary that Congress, in conferring diversity jurisdiction upon them, did not intend thereby to open those courts to suitors who by sham, pretense or fiction acquired an apparent or spurious status that would enable them to invoke federal jurisdiction. It was in recognition of this limited nature of the diversity jurisdiction of the federal courts that Congress, since the earliest days, has enacted legislation designed to prevent suitors from invoking that jurisdiction through the collusive creation of the right to invoke such jurisdiction by a transferor who could not have so invoked that jurisdiction.

■ The clear purpose of that legislation has been to close the federal courts to litigants who properly should litigate their controversies in state tribunals except where there exists a real diversity of citizenship. And it is within the purview of such Congressional intent that the federal courts not only should prevent unauthorized incursions upon their jurisdiction, but that they should be alert to ascertain and to aggressively defend against any attempted invasion of their diversity jurisdiction. That this policy of protecting the diversity jurisdiction of the federal courts has long been recognized and followed is convincingly indicated by a pronouncement of the Supreme Court made in 1881, in Williams v. Nottawa, 104 U.S. 209, 211, 26 L.Ed. 719: "In extending a long way the jurisdiction of the courts of the United States, Congress was specially careful to guard against the consequences of collusive transfers to make parties, and imposed the duty on the court, on its own motion, without waiting for the parties, to stop all further proceedings and dismiss the suit the moment anything of the kind appeared. This was for the protection of the court as well as the parties against frauds upon its jurisdiction; for as was very properly said by Mr. Justice Miller, speaking for the court in Barney v. [City of] Baltimore, supra [6 Wall 280, 18 L. Ed. 825], such transfers for such purpose are frauds upon the court, and nothing more."

■ There can be no dispute that when the question in issue is whether an assignment or transfer is real and absolute or is merely colorable, intended to make a party collusively for the purpose of invoking the diversity jurisdiction of the federal courts, it is the duty of the court to inquire fully into all the circumstances and conditions which surround the making of the assignment or transfer in order that it might determine whether jurisdictional grounds do in fact exist. And when such an inquiry is proper, the court must require the party asserting a right to an exercise of its jurisdiction to support the claim thereto by competent evidence. Hartog v. Memory, 116 U.S. 588, 6 S.Ct. 521, 29 L.Ed. 725; McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Thomson v. Gaskill, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951; Benedict v. Seiberling, D.C., 17 F.2d 841; Pure Oil Co. v. Puritan Oil Co., 2 Cir., 127 F.2d 6.

The principles controlling of decision in the instant case are clearly and exhaustively set forth in McNutt v. General Motors Acceptance Corporation, supra, 298 U.S. at pages 188–189, 56 S.Ct. at page 785: "The act of 1875 prescribes a uniform rule and there should be a consistent practice in dealing with jurisdictional questions. We think that the terms and implications of the act leave no sufficient ground for varying rules as to the burden

796

of proof. The prerequisites to the exercise of jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met. *They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor.* He must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations. In the nature of things, *the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf.* As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court. The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of this burden by any formal procedure. *If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.* And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence. We think that only in this way may the practice of the District Courts be harmonized with the true intent of the statute which clothes them with adequate authority and imposes upon them a correlative duty." (Emphasis supplied.)

■ The defendant's motion to dismiss challenges directly the existence of the jurisdiction alleged by plaintiff and puts into issue the question of whether the alleged assignment of March 8, 1949, collusively made plaintiff a party here for the purpose of invoking the jurisdiction of this court. And it has become the obligation of plaintiff to establish by competent evidence, the facts upon which he bases his assertion to jurisdiction.

In the first place, plaintiff's basic allegations with respect to diversity are defective in that they do not sufficiently allege diversity of citizenship within the meaning of Section 863 of Title 48, U.S. C.A., which statute is definitive of the jurisdiction of this court. Said Section 863 reads as follows: "Said district court shall have jurisdiction of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign State or States, or citizens of a State, Territory, or District of the United States *not domiciled in Puerto Rico * * ***". (Emphasis supplied.)

■ In the instant case it is alleged only that plaintiff and defendant are "residents" of New York and Puerto Rico, respectively. Such allegations are clearly defective in that neither the diversity of citizenship nor the domiciliary requirements of the statute are sufficiently alleged. It may be that such diversity of citizenship and lack of domicile could be inferred from the record here and that if such defects were the only factor present, this court could, under the provisions of Section 1653 of Title 28, U.S.C.A., permit an amendment of the allegations to conform with the requirements of said Section 863 of Title 48, U.S.C.A. However, to permit such an amendment of the defective allegations would be but a meaningless gesture, for plaintiff, although fully apprised of the grounds upon which defendant has moved for dismissal, has not met the burden of proof that is properly his and has failed to prove that jurisdictional grounds do in fact exist. See Keene Lumber Co. v. Leventhal, 1 Cir., 165 F.2d 815, 819; Joy v. Hague, 1 Cir., 175 F.2d 395, 396.

In reaching this conclusion, this court has considered the effect of the principle established in decisions interpreting the former Section 80. It was well established by those decisions that if a transfer was real and operated to divest the transferor of all title and interest in and to the

subject matter of the transfer, and left the transferor with no residual power of control over said subject matter, a real and actual controversy existed between the parties and jurisdiction was rightfully invoked. And in those cases it was uniformly held that the motive of the transferor in making the transfer had no effect on the right of the transferee to invoke diversity jurisdiction. Lehigh Mining & Manufacturing Co. v. Kelly, 160 U.S. 327, 336, 16 S.Ct. 307, 40 L.Ed. 444; Bloomfield Village Drainage District v. Keefe, 6 Cir., 119 F.2d 157. And this was held to be so even though the motive of the transferor was to confer status on the transferee which would enable him to invoke federal jurisdiction. Cross v. Allen, 141 U.S. 528, 12 S.Ct. 67, 35 L.Ed. 843. However, an examination of those decisions reveals that such rule was applicable only where the transfer was established as being real and absolute and it was never held to preclude inquiry into the motives of the transferor when the question in issue was whether the transfer was in fact, real and absolute. Lehigh Mining & Manufacturing Co. v. Kelly, supra; Black & White Taxi Cab & Transfer Co. v. Brown & Yellow Taxi Cab & Transfer Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681.

Consequently, conceding that the rule is applicable in reaching decision in cases under Section 1359, it does not preclude inquiry into the circumstances and conditions in the instant case because here the question in issue is whether the assignment was real and absolute or merely colorable and collusive.

It is clear that the plaintiff here has failed to establish that jurisdictional grounds do in fact exist. Although fully apprised of the grounds upon which the defendant based his motion to dismiss, he did not submit any evidence in support of his allegations of jurisdiction. Although he states that the assignment to him was made in a writing, he has not produced the writing. The defendant asserts that such an assignment was never made. Thus, the non-existence of the written instrument being asserted, and it being pre-sumed that if it did exist the plaintiff had access to it, his failure to produce the writing supports an inference that it does not in fact exist. Neither has the plaintiff, although a director and president of the alleged assignor Corporation, produced any corporate records which would establish that such assignment, if made, was made validly and authoritatively. In other words, although the burden of establishing the existence of the challenged jurisdictional grounds is his, plaintiff has failed to produce evidence which must have been readily available to him if it existed by reason of his close identity with the Corporation. This failure of plaintiff to sustain the jurisdiction he alleges is a sufficient reason, standing alone, for granting the defendant's motion to dismiss for lack of jurisdiction.

If further reason for granting the defendant's motion to dismiss is needed, it may be found in the writings submitted in evidence by the defendant at the hearing on his motion to dismiss. All of these writings were dated after March 8, 1949, the date of the alleged assignment of the contract to plaintiff by the Corporation. The content of these writings is so clearly inconsistent with the plaintiff's contention that a bona fide assignment was made to him by Corporation, that it must be concluded that neither the Corporation or the plaintiff ever intended or considered that the assignment, if made, operated so as to completely divest the Corporation of all interest in and power of control over the contract or any rights under it. And the close identity that exists between the plaintiff and the Corporation is likewise convincing that the Corporation has a residual power of control over the contract or any rights under it which is inconsistent with the idea of a real and absolute assignment thereof to the plaintiff.

It is concluded that the alleged assignment of March 8, 1949, if made at all, was merely colorable and intended to collusively make plaintiff a party to this action for the purpose of invoking the jurisdiction of this court within the meaning of Section 1359, Title 28, U.S.C.A., and that,

therefore, this court, is without jurisdiction to entertain the suit.

Defendant's motion to dismiss the complaint is granted without consideration of the merits of plaintiff's cause.