*959 Justice ALITO delivered the opinion of the Court.
We return to a subject that we addressed in Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. ----, 134 S.Ct. 1962, 188 L.Ed.2d 979 (2014) : the relationship between the equitable defense of laches and claims for damages that are brought within the time allowed by a statute of limitations. In Petrella, we held that laches cannot preclude a claim for damages incurred within the Copyright Act's 3-year limitations period. Id ., at ----, 134 S.Ct., at 1967. "[L]aches," we explained, "cannot be invoked to bar legal relief" "[i]n the face of a statute of limitations enacted by Congress." Id ., at ----, 134 S.Ct., at 1974. The question in this case is whether Petrella 's reasoning applies to a similar provision of the Patent Act, 35 U.S.C. § 286. We hold that it does.
I
Petitioners SCA Hygiene Products Aktiebolag and SCA Personal Care, Inc. (collectively, SCA), manufacture and sell adult incontinence products. In October 2003, SCA sent a letter to respondents (collectively, First Quality), alleging that First Quality was making and selling products that infringed SCA's rights under U.S. Patent No. 6,375,646 B1 ('646 patent). App. 54a. First Quality responded that one of its patents- U.S. Patent No. 5,415,649 (Watanabe patent) -antedated the '646 patent and revealed "the same diaper construction." Id., at 53a. As a result, First Quality maintained, the '646 patent was invalid and could not support an infringement claim. Ibid. SCA sent First Quality no further correspondence regarding the '646 patent, and First Quality proceeded to develop and market its products.
In July 2004, without notifying First Quality, SCA asked the Patent and Trademark Office (PTO) to initiate a reexamination proceeding to determine whether the '646 patent was valid in light of the Watanabe patent. Id ., at 49a-51a. Three years later, in March 2007, the PTO issued a certificate confirming the validity of the '646 patent.
In August 2010, SCA filed this patent infringement action against First Quality. First Quality moved for summary judgment based on laches and equitable estoppel, and the District Court granted that motion on both grounds. 2013 WL 3776173, *12 (W.D.Ky., July 16, 2013).
SCA appealed to the Federal Circuit, but before the Federal Circuit panel issued its decision, this Court decided Petrella. The panel nevertheless held, based on a Federal Circuit precedent, A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020 (1992) (en banc), that SCA's claims were barred by laches.[1]
The Federal Circuit then reheard the case en banc in order to reconsider Aukerman in light of Petrella . But in a 6-to-5 decision, the en banc court reaffirmed Aukerman 's holding that laches can be asserted to defeat a claim for damages incurred within the 6-year period set out in the Patent Act. As it had in Aukerman, the en banc court concluded that Congress, in enacting the Patent Act, had "codified a laches defense" that "barred recovery of legal remedies." 807 F.3d 1311, 1323-1329 (2015). Judge Hughes, joined by four other judges, dissented.[2] Id., at 1337-1342 *960 (opinion concurring in part and dissenting in part). We granted certiorari. 578 U.S. ----, 136 S.Ct. 1824, 194 L.Ed.2d 829 (2016).
II
Laches is "a defense developed by courts of equity" to protect defendants against "unreasonable, prejudicial delay in commencing suit." Petrella, supra, at ----, ----, 134 S.Ct., at 1967, 1973. See also 1 D. Dobbs, Law of Remedies § 2.3(5), p. 89 (2d ed. 1993) (Dobbs) ("The equitable doctrine of laches bars the plaintiff whose unreasonable delay in prosecuting a claim or protecting a right has worked a prejudice to the defendant"). Before the separate systems of law and equity were merged in 1938, the ordinary rule was that laches was available only in equity courts.[3] See County of Oneida v. Oneida Indian Nation of N. Y., 470 U.S. 226, 244, n. 16, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985). This case turns on the application of the defense to a claim for damages, a quintessential legal remedy. We discussed this subject at length in Petrella .
Petrella arose out of a copyright dispute relating to the film Raging Bull. 572 U.S., at ----, 134 S.Ct., at 1971. The Copyright Act's statute of limitations requires a copyright holder claiming infringement to file suit "within three years after the claim accrued." 17 U.S.C. § 507(b). In Petrella, the plaintiff sought relief for alleged acts of infringement that accrued within that 3-year period, but the lower courts nevertheless held that laches barred her claims. See 695 F.3d 946 (C.A.9 2012). We reversed, holding that laches cannot defeat a damages claim brought within the period prescribed by the Copyright Act's statute of limitations. Petrella, 572 U.S., at ---- - ----, 134 S.Ct., at 1972-1975. And in so holding, we spoke in broad terms. See id ., at ----, 134 S.Ct., at 1974 ("[I]n the face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief").
Petrella 's holding rested on both separation-of-powers principles and the traditional role of laches in equity. Laches provides a shield against untimely claims, id., at ----, 134 S.Ct., at 1977, and statutes of limitations serve a similar function. When Congress enacts a statute of limitations, it speaks directly to the issue of timeliness and provides a rule for determining whether a claim is timely enough to permit relief. Id., at ----, 134 S.Ct., at 1972-1973. The enactment of a statute of limitations necessarily reflects a congressional decision that the timeliness of covered claims is better judged on the basis of a generally hard and fast rule rather than the sort of case-specific judicial determination that occurs when a laches defense is asserted. Therefore, applying laches within a limitations period specified by Congress would give judges a "legislation-overriding" role that is beyond the Judiciary's power. Id., at ----, 134 S.Ct., at 1974. As we stressed in Petrella, "courts are not at liberty to jettison Congress' judgment on the timeliness of suit." Id., at ----, 134 S.Ct., at 1967.
*961 Applying laches within the limitations period would also clash with the purpose for which the defense developed in the equity courts. As Petrella recounted, the "principal application" of laches "was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation." Id., at ----, 134 S.Ct., at 1973 ; see also R. Weaver, E. Shoben, & M. Kelly, Principles of Remedies Law 21 (2d ed. 2011); 1 Dobbs § 2.4(4), at 104; 1 J. Story, Commentaries on Equity Jurisprudence § 55(a ), p. 73 (2d ed. 1839). Laches is a gap-filling doctrine, and where there is a statute of limitations, there is no gap to fill.[4] Petrella, supra, at ----, 134 S.Ct., at 1974-1975 ; see also 1 Dobbs § 2.4(4), at 108 ("[I]f the plaintiff has done only what she is permitted to do by statute, and has not misled the defendant [so as to trigger equitable estoppel], the basis for barring the plaintiff seems to have disappeared").
With Petrella 's principles in mind, we turn to the present dispute.
III
A
Although the relevant statutory provisions in Petrella and this case are worded differently, Petrella 's reasoning easily fits the provision at issue here. As noted, the statute in Petrella precludes a civil action for copyright infringement "unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). We saw in this language a congressional judgment that a claim filed within three years of accrual cannot be dismissed on timeliness grounds. 572 U.S., at ----, 134 S.Ct., at 1972-1973 ; see also id., at ---- - ----, 134 S.Ct., at 1974-1975.
The same reasoning applies in this case. Section 286 of the Patent Act provides: "Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." By the logic of Petrella, we infer that this provision represents a judgment by Congress that a patentee may recover damages for any infringement committed within six years of the filing of the claim.
B
First Quality contends that this case differs from Petrella because § 286 of the Patent Act is not a true statute of limitations. A true statute of limitations, we are told, "runs forward from the date a cause of action accrues," but § 286"runs backward from the time of suit." Brief for Respondents 41.
Petrella cannot reasonably be distinguished on this ground. First Quality thinks it critical that § 286"runs backward from the time of suit," Brief for Respondents 41, but Petrella described the Copyright Act's statute of limitations in almost identical terms. We said that this provision "allows plaintiffs ... to gain retrospective relief running only three years back from the date the complaint was filed ."
*962 572 U.S., at ----, 134 S.Ct., at 1970 (emphasis added). See also id ., at ----, 134 S.Ct., at 1973 ("[A] successful plaintiff can gain retrospective relief only three years back from the time of suit"). And we described the Copyright Act's statute of limitations as "a three-year look-back limitations period." Id., at ----, 134 S.Ct., at 1968.
First Quality contends that the application of a true statute of limitations, like the defense of laches (but unlike § 286 ), takes into account the fairness of permitting the adjudication of a particular plaintiff's claim. First Quality argues as follows: "When Congress enacts [a true statute of limitations], it can be viewed as having made a considered judgment about how much delay may occur after a plaintiff knows of a cause of action (i.e., after accrual) before the plaintiff must bring suit-thus potentially leaving no room for judges to evaluate the reasonableness of a plaintiff's delay on a case-by-case basis under laches." Brief for Respondents 42. According to First Quality, § 286 of the Patent Act is different because it "turns only on when the infringer is sued, regardless of when the patentee learned of the infringement." Ibid .
This argument misunderstands the way in which statutes of limitations generally work. First Quality says that the accrual of a claim, the event that triggers the running of a statute of limitations, occurs when "a plaintiff knows of a cause of action," ibid., but that is not ordinarily true. As we wrote in Petrella, "[a] claim ordinarily accrues 'when [a] plaintiff has a complete and present cause of action.' " 572 U.S., at ----, 134 S.Ct., at 1969 ; see Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 418-419, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005). While some claims are subject to a "discovery rule" under which the limitations period begins when the plaintiff discovers or should have discovered the injury giving rise to the claim, that is not a universal feature of statutes of limitations. See, e.g.,ibid. (limitations period in 31 U.S.C. § 3731(b)(1) begins to run when the cause of action accrues); TRW Inc. v. Andrews, 534 U.S. 19, 28, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (same with regard to 15 U.S.C. § 1681p ). And in Petrella, we specifically noted that "we have not passed on the question" whether the Copyright Act's statute of limitations is governed by such a rule. 572 U.S., at ----, n. 4, 134 S.Ct., at 1969, n. 4.
For these reasons, Petrella cannot be dismissed as applicable only to what First Quality regards as true statutes of limitations. At least for present purposes, nothing depends on this debatable taxonomy. Compare Automobile Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 704, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) (describing § 286 as "enacting a uniform period of limitations"); 1 Dobbs § 2.4(4), at 107, and n. 33 (same), with A. Stucki Co. v. Buckeye Steel Castings Co., 963 F.2d 360, 363, n. 3 (C.A.Fed.1992) ( Section 286"is not, strictly speaking, a statute of limitations"); Standard Oil Co. v. Nippon Shokubai Kagaku Co., Ltd., 754 F.2d 345, 348 (C.A.Fed.1985) ("[ Section] 286 cannot properly be called a 'statute of limitations' in the sense that it defeats the right to bring suit").
C
The Federal Circuit based its decision on a different footing. Section 286 of the Patent Act begins with the phrase "[e]xcept as otherwise provided by law," and according to the Federal Circuit, § 282 of the Act is a provision that provides otherwise. In its view, § 282 creates an exception to § 286 by codifying laches as a defense to all patent infringement claims, including claims for damages suffered within § 286's 6-year period.
*963 807 F.3d, at 1329-1330. Section 282(b), which does not specifically mention laches, provides in relevant part as follows:
"The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:
"(1) Noninfringement, absence of liability for infringement or unenforceability."
The en banc majority below never identified which word or phrase in § 282 codifies laches as a defense, but First Quality argues that laches falls within § 282(b)(1) because laches is a defense based on "unenforceability." Brief for Respondents 28-33.
SCA disputes this interpretation of § 282(b)(1), arguing that laches does not make a patent categorically unenforceable. Reply Brief 6-8; see Aukerman, 960 F.2d, at 1030 ("Recognition of laches as a defense ... does not affect the general enforceability of the patent against others"). We need not decide this question. Even if we assume for the sake of argument that § 282(b)(1) incorporates a laches defense of some dimension, it does not necessarily follow that this defense may be invoked to bar a claim for damages incurred within the period set out in § 286. Indeed, it would be exceedingly unusual, if not unprecedented, if Congress chose to include in the Patent Act both a statute of limitations for damages and a laches provision applicable to a damages claim. Neither the Federal Circuit, nor First Quality, nor any of First Quality's amici has identified a single federal statute that provides such dual protection against untimely claims.
D
In holding that Congress codified a damages-limiting laches defense, the Federal Circuit relied on patent cases decided by the lower courts prior to the enactment of the Patent Act. After surveying these cases, the Federal Circuit concluded that by 1952 there was a well-established practice of applying laches to such damages claims and that Congress, in adopting § 282, must have chosen to codify such a defense in § 282(b)(1). 807 F.3d, at 1321-1329. First Quality now presses a similar argument. We have closely examined the cases on which the Federal Circuit and First Quality rely, and we find that they are insufficient to support the suggested interpretation of the Patent Act. The most prominent feature of the relevant legal landscape at the time of enactment of the Patent Act was the well-established general rule, often repeated by this Court, that laches cannot be invoked to bar a claim for damages incurred within a limitations period specified by Congress. See Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743 (1946) ("If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter"); United States v. Mack, 295 U.S. 480, 489, 55 S.Ct. 813, 79 L.Ed. 1559 (1935) ("Laches within the term of the statute of limitations is no defense at law"); Wehrman v. Conklin, 155 U.S. 314, 326, 15 S.Ct. 129, 39 L.Ed. 167 (1894) ("Though a good defense in equity, laches is no defense at law. If the plaintiff at law has brought his action within the period fixed by the statute of limitations, no court can deprive him of his right to proceed"); Cross v. Allen, 141 U.S. 528, 537, 12 S.Ct. 67, 35 L.Ed. 843 (1891) ("So long as the demands secured were not barred by the statute of limitations, there could be no laches in prosecuting a suit"). Petrella confirmed and restated this long-standing rule. 572 U.S., at ----, 134 S.Ct., at 1973 ("[T]his Court has cautioned against invoking laches to bar legal relief"). If Congress examined the relevant legal landscape when it adopted *964 35 U.S.C. § 282, it could not have missed our cases endorsing this general rule.
The Federal Circuit and First Quality dismiss the significance of this Court's many reiterations of the general rule because they were not made in patent cases. But as the dissenters below noted, "[p]atent law is governed by the same common-law principles, methods of statutory interpretation, and procedural rules as other areas of civil litigation." 807 F.3d, at 1333 (opinion of Hughes, J.).
In light of the general rule regarding the relationship between laches and statutes of limitations, nothing less than a broad and unambiguous consensus of lower court decisions could support the inference that § 282(b)(1) codifies a very different patent-law-specific rule. No such consensus is to be found.[5]
IV
The pre-1952 cases on which First Quality relies fall into three groups: (1) cases decided by equity courts before 1938; (2) cases decided by law courts before 1938; and (3) cases decided after the merger of equity and law in 1938. We will discuss each group separately.
A
Pre-1938 equity cases
The pre-1938 equity cases are unpersuasive for several, often overlapping reasons. Many do not even reveal whether the plaintiff asked for damages. Indeed, some say nothing at all about the form of relief that was sought, see, e.g., Cummings v. Wilson & Willard Mfg. Co., 4 F.2d 453 (C.A.9 1925), and others state only that the plaintiff wanted an accounting of profits, e.g., Westco-Chippewa Pump Co. v. Delaware Elec. & Supply Co., 64 F.2d 185, 186 (C.A.3 1933) ; Wolf Mineral Process Corp. v. Minerals Separation North Am. Corp., 18 F.2d 483, 484 (C.A.4 1927). The equitable remedy of an accounting, however, was not the same as damages. The remedy of damages seeks to compensate the victim for its loss, whereas the remedy of an accounting, which Congress abolished in the patent context in 1946,[6] sought disgorgement of ill-gotten profits. See Birdsall v. Coolidge, 93 U.S. 64, 68-69, 23 L.Ed. 802 (1876) ; 1 Dobbs § 4.3(5), at 611 ("Accounting holds the defendant liable for his profits, not for damages"); A. Walker, Patent Laws § 573, p. 401 (1886) (distinguishing between the two remedies); G. Curtis, Law of Patents § 341(a ), p. 461 (4th ed. 1873); 2 J. Pomeroy, Treatise on Equitable Remedies § 568, p. 977 (1905).
First Quality argues that courts sometimes used the term "accounting" imprecisely to refer to both an accounting of profits and a calculation of damages, Brief for Respondents 19-20, but even if that is true, this loose usage shows only that a reference to "accounting" might refer to damages. For that reason, the Federal Circuit did not rely on cases seeking only *965 an accounting, 807 F.3d, at 1326, n. 7, and we likewise exclude such cases from our analysis.
Turning to the cases that actually refer to damages, we note that many of the cases merely suggest in dicta that laches might limit recovery of damages. See, e.g., Hartford-Empire Co. v. Swindell Bros., 96 F.2d 227, 233, modified on reh'g, 99 F.2d 61 (C.A.4 1938). Such dicta "settles nothing." Jama v. Immigration and Customs Enforcement, 543 U.S. 335, 351, n. 12, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005). See also Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U.S. 1, 9-10, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) ; Metropolitan Stevedore Co. v. Rambo, 515 U.S. 291, 300, 115 S.Ct. 2144, 132 L.Ed.2d 226 (1995).
As for the cases in which laches was actually held to bar a claim for damages, e.g., Wolf, Sayer & Heller v. United States Slicing Mach. Co., 261 F. 195, 197-198 (C.A.7 1919) ; A.R. Mosler & Co. v. Lurie, 209 F. 364, 369-370 (C.A.2 1913), these cases are too few to establish a settled, national consensus. See Hartford Underwriters, supra, at 10, 120 S.Ct. 1942.
Moreover, the most that can possibly be gathered from a pre-1938 equity case is that laches could defeat a damages claim in an equity court, not that the defense could entirely prevent a patentee from recovering damages. Before 1870, a patentee wishing to obtain both an injunction against future infringement and damages for past infringement was required to bring two suits, one in an equity court (where injunctive relief but not damages was available), and one in a court of law (where damages but not injunctive relief could be sought). See Beauchamp, The First Patent Litigation Explosion, 125 Yale L.J. 848, 913-914 (2016). To rectify this situation, Congress enacted a law in 1870 authorizing equity courts to award damages in patent-infringement actions. Rev. Stat. § 4921. And although statutes of limitations did not generally apply in equity, Congress in 1897 enacted a statute that, like the current § 286, imposed a 6-year limitations period for damages claims and made that statute applicable in both law and equity. § 6, 29 Stat. 694. Pointing to cases decided between 1897 and 1938 in which an equity court permitted a defendant in an infringement case to invoke the defense of laches, First Quality contends that Congress, aware of these cases, assumed that the 1952 Act would likewise allow a defendant in an infringement case to claim laches with respect to a claim for damages occurring within a limitations period.
This argument overlooks the fact that a patentee, during the period in question, could always sue for damages in law, where the equitable doctrine of laches did not apply, and could thus avoid any possible laches defense. Thus, accepting First Quality's argument would not return patentees to the position they held from 1897 to 1938. Instead, it would go much further and permit laches entirely to defeat claims like SCA's.[7]
B
Pre-1938 claims at law
First Quality cites three Court of Appeals cases in which laches was raised in a proceeding at law and in which, according to First Quality, the defense was held to bar a damages claim. See Universal Coin *966 Lock Co. v. American Sanitary Lock Co., 104 F.2d 781 (C.A.7 1939) ; Banker v. Ford Motor Co., 69 F.2d 665 (C.A.3 1934) ; Ford v. Huff, 296 F. 652 (C.A.5 1924). But even if all of these cases squarely held that laches could be applied to a damages claim at law within the limitations period, they would still constitute only a handful of decisions out of the corpus of pre-1952 patent cases, and that would not be enough to overcome the presumption that Congress legislates against the background of general common-law principles. See H. McClintock, Handbook of the Principles of Equity § 28, p. 75 (2d ed. 1948) ("The majority of the courts which have considered the question have refused to enjoin an action at law on the ground of the laches of the plaintiff at law").
In any event, these cases, like the equity cases, offer minimal support for First Quality's position. Not one of these cases even mentions the statute of limitations. One of the three, Ford, is not even a patent infringement case; it is a breach-of-contract case arising out of a patent dispute, 296 F., at 654, and it is unclear whether the ground for decision was laches or equitable estoppel. See 807 F.3d, at 1340 (opinion of Hughes, J.). Another, Universal Coin, applied laches to a legal damages claim without any analysis of the propriety of doing so. 104 F.2d, at 783.
First Quality protests that the paucity of supporting cases at law should not count against its argument since very few patent-infringement cases were brought at law after 1870. Brief for Respondents 25-26. But the fact remains that it is First Quality's burden to show that Congress departed from the traditional common-law rule highlighted in our cases.[8]
C
Post-merger cases
First Quality claims that courts continued to apply laches to damages claims after the merger of law and equity in 1938, but First Quality's evidence is scant. During this period, two Courts of Appeals stated in dicta that laches could bar legal damages claims. See Chicago Pneumatic Tool Co. v. Hughes Tool Co., 192 F.2d 620, 625 (C.A.10 1951) ; Shaffer v. Rector Well Equip. Co., 155 F.2d 344, 347 (C.A.5 1946). And two others actually held that laches could bar a damages claim. See, e.g., Brennan v. Hawley Prods. Co., 182 F.2d 945, 948 (C.A.7 1950) ; Lukens Steel Co. v. American Locomotive Co., 197 F.2d 939, 941 (C.A.2 1952) (alternative holding). This does not constitute a settled, uniform practice of applying laches to damages claims.
After surveying the pre-1952 case law, we are not convinced that Congress, in enacting § 282 of the Patent Act, departed from the general rule regarding the application of laches to damages suffered within the time for filing suit set out in a statute of limitations.
V
First Quality's additional arguments do not require extended discussion. First Quality points to post-1952 Court of Appeals decisions holding that laches can be invoked as a defense against a damages claim. Noting that Congress has amended § 282 without altering the " 'unenforceability' " language that is said to incorporate a laches defense, First Quality contends that Congress has implicitly ratified these decisions. Brief for Respondents 35-36.
We reject this argument. Nothing that Congress has done since 1952 has altered *967 the meaning of § 282. See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A., 511 U.S. 164, 186, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) ; West Virginia Univ. Hospitals, Inc. v. Casey, 499 U.S. 83, 100, 101, and n. 7, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991).
First Quality and its supporting amici also make various policy arguments, but we cannot overrule Congress's judgment based on our own policy views. We note, however, as we did in Petrella, that the doctrine of equitable estoppel provides protection against some of the problems that First Quality highlights, namely, unscrupulous patentees inducing potential targets of infringement suits to invest in the production of arguably infringing products. 572 U.S., at ----, 134 S.Ct., at 1972. Indeed, the Federal Circuit held that there are genuine disputes of material fact as to whether equitable estoppel bars First Quality's claims in this very case. See 807 F.3d, at 1333.
* * *
Laches cannot be interposed as a defense against damages where the infringement occurred within the period prescribed by § 286. The judgment of the Court of Appeals is vacated in part, and the case is remanded for further proceedings consistent with this opinion.
It is so ordered.

The panel reversed the District Court's holding on equitable estoppel, concluding that there are genuine disputes of material fact relating to that defense. 767 F.3d 1339, 1351 (C.A.Fed.2014).

The dissenting judges concurred in the portion of the majority opinion relating to the application of laches to equitable relief. 807 F.3d, at 1333, n. 1 (opinion of Hughes, J.); see also id., at 1331-1333 (majority opinion). We do not address that aspect of the Federal Circuit's judgment. Nor do we address the Federal Circuit's reversal of the District Court's equitable estoppel holding. Id., at 1333 (reinstating original panel holding on equitable estoppel).

"The federal courts always had equity powers as well as law power, but they operated, until the Federal Rules of Civil Procedure, by distinctly separating equity cases and even had separate equity rules." 1 Dobbs § 2.6(1), at 148, n. 2; see also Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 279, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988). It is in this sense that we refer in this opinion to federal courts as equity or law courts.

The dissent argues that there is a "gap" in the statutory scheme because the Patent Act's statute of limitations might permit a patentee to wait until an infringing product has become successful before suing for infringement. Post, at 967 - 968 (opinion of BREYER, J.). We rejected a version of this argument in Petrella, 572 U.S., at ---- - ----, 134 S.Ct., at 1975-1976, and we do so here. The dissent's argument implies that, insofar as the lack of a laches defense could produce policy outcomes judges deem undesirable, there is a "gap" for laches to fill, notwithstanding the presence of a statute of limitations. That is precisely the kind of "legislation-overriding" judicial role that Petrella rightly disclaimed. Id., at ----, 134 S.Ct., at 1975.

Because we conclude that First Quality fails to show that there was a special laches rule in the patent context, we need not address whether it is ever reasonable to assume that Congress legislated against the background of a lower court consensus rather than the contrary decisions of this Court. Cf. 807 F.3d, at 1338 (opinion of Hughes, J.) ("For even if there were differing views in the lower [federal] courts, it would be nearly impossible to conclude that there was a uniform understanding of the common law that was inconsistent with Supreme Court precedent. In our judicial system, the Supreme Court's understanding is controlling").

See 60 Stat. 778; see also Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 505, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964).

The dissent misunderstands this point and thinks that we dismiss the relevance of the equity cases because they applied laches "to equitable claims without statutes of limitations." Post, at 969. But we are well aware that a statute of limitations applied in equity when these cases arose. See supra, at 965.

For the same reason, the dissent misses the mark when it demands that we cite cases "holding that laches could not bar a patent claim for damages." Post, at 971.