Argued at Pendleton May 6; affirmed October 21, 1930

# UNION CENTRAL LIFE INS. CO. *v.*
# PARKS ET AL.

(292 P. 304)

*Robert D. Lytle* of Vale for respondent.

*Wm. E. Lees* of Ontario (Robert E. Lees of Ontario on the brief) for appellants.

BROWN, J.   Could the appealing defendant, the owner of the land subject to a mortgage lien, clear his lands of such lien by the purchase of a tax title from Malheur county?   The determination of that question is decisive of this case.

The principle of law determinative of the issue has long been settled in our jurisdiction.   In the early case of *Nickum v. Gaston,* 24 Or. 380 (33 P. 671, 35 P. 31), this court, speaking through Mr. Justice BEAN, made the following statement with relation to the rule which governs in cases like the one under consideration:

"The law is well settled that a mortgagor, or his successor in interest, remaining in possession of the land, cannot permit the mortgaged property to be sold for taxes, and become the purchaser thereof, either directly or through the agency of another, for

the purpose of cutting off a prior lien. He is under a legal obligation to pay the taxes, and cannot, by neglecting to perform this duty, and suffering the land to be sold in consequence of such neglect, add to or strengthen his title by purchasing at the sale himself, or by subsequently buying from a stranger who purchased thereat. By such a purchase he does not acquire, as against the lienholder, any title or right to the property better than he had before, but the sale will operate only as a mode of paying the taxes, leaving the title in the same condition as if no sale had been made. 'This principle is universal,' says Judge Cooley, 'and it is so entirely reasonable as scarcely to need the support of authority. Show the existence of the duty, and the disqualification is made out in every instance.' Cooley on Taxation, 345; Blackwell on Tax Titles, §§ 566, 591 * * *. When the purchase at such a tax sale is made by the owner directly, or when he afterwards acquires title from a stranger who purchased at the sale, it operates, as to the lienholder, only as a payment of the taxes, and the owner does not acquire any title to the property as against such lienholder better or stronger than what he had before the sale. It is, in effect, as if no sale had in fact been made, but as if the owner had discharged his duty by paying the taxes before the sale.''

From this doctrine our court has never departed.

In 2 Jones on Mortgages (7th Ed.), at section 680, there appears an interesting discussion, where the author, treating of the right of a mortgagor to set up a tax title in order to defeat the mortgage lien, says:

''A mortgagor or his grantee can not, by acquiring a tax title upon the land, defeat the lien of the mortgagee.''

In support of this proposition, many authorities are cited under note 19. Continuing, the author says:

''The rule in these cases is based upon the obligation of the mortgagor, or the party claiming under

him, to pay the taxes; therefore, the act of the party acquiring title through his own default is held to be fraudulent. It is his duty to pay the taxes, and he is not allowed to acquire a title through his own default. The same obligation rests upon one who has purchased the land of the mortgagor. When the taxes are paid by one who has merely a lien upon the land, there is of course no obligation upon him to pay the taxes; and, although he may acquire the tax title for the protection of his own lien, he is not allowed to set up that title to defeat a prior lien. The land is regarded as a common fund for the payment of both liens, and equity regards it as an act of fraud for him to acquire a title to the land for an inconsiderable sum, and use it to destroy the claim of the prior mortgagee to the land.''

This is the view taken in Minnesota. See *Hoyt v. Lightbody,* 98 Minn. 189 (108 N. W. 843, 8 Ann. Cas. 984, 116 Am. St. Rep. 358, and note).

In brief, the doctrine hereinabove declared is generally recognized, and is well calculated to promote the ends of justice. Following, therefore, the governing principles which underlies the case before us, we direct the affirmance of the decree of foreclosure.