Argued and submitted February 15, 2022; as to plaintiff's claim for declaratory relief, vacated and remanded for entry of judgment declaring the rights of the parties, otherwise affirmed April 5, petition for review denied September 14, 2023 (371 Or 333)

Jeanette A. PETIX,
*Plaintiff-Appellant,*

*v.*

Aaron L. GILLINGHAM;
James B. Shikany; and
Aries Holdings 1, LLC,
*Defendants-Respondents,*
*and*

PERKINS COIE, LLP et al.,
*Defendants.*

Washington County Circuit Court
19CV49445; A175438

528 P3d 1152

Plaintiff appeals from a limited judgment of dismissal in a dispute about the rights of the parties in real property following foreclosure. She assigns error to the trial court's: (1) dismissal of her claim for declaratory relief and (2) dismissal of her claim for fraudulent transfer. The key question underlying each assignment is whether defendant, who purchased redemption rights from the foreclosed mortgagor and then purchased the certificate of sale from the certificate holder, redeemed the property. *Held*: The trial court's dismissal of the declaratory judgment claim as nonjusticiable was in error, but that dismissal was necessarily based on a determination of the underlying controversy. The Court of Appeals followed its practice under similar circumstances to review the trial court's merits determination and concluded that the trial court did not err. There was no redemption, and therefore, plaintiff's lien rights were not restored. Finally, the trial court did not err in dismissing the fraudulent transfer claim for failure to state a claim for relief.

As to plaintiff's claim for declaratory relief, vacated and remanded for entry of judgment declaring the rights of the parties; otherwise affirmed.

Oscar Garcia, Judge.

Stanley D. Gish argued the cause and filed the briefs for appellant.

J. Aaron Landau argued the cause for respondents. On the briefs were Harrang Long Gary Rudnick P.C., Graham

M. Sweitzer, McEwen Gisvold LLP, J. Kurt Kraemer, and Jonathan M. Radmacher.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

As to plaintiff's claim for declaratory relief, vacated and remanded for entry of judgment declaring the rights of the parties; otherwise affirmed.

**MOONEY, J.**

This is an appeal from a limited judgment of dismissal in a dispute about the rights of the parties in real property following foreclosure where the key question presented is whether defendant Aries Holdings 1, LLC (Aries),[1] purchaser of both the certificate of sale and redemption rights, redeemed the property. Plaintiff raises two assignments of error, asserting that the trial court erred by (1) dismissing her claim for declaratory relief and (2) dismissing her claim for fraudulent transfer.

Defendants sought dismissal of both claims under ORCP 21 A(8).[2] They requested dismissal of the first claim due to the failure to allege facts sufficient to state a declaratory judgment claim "which requires the presence of a justiciable controversy." Defendants argued in substance that, even assuming the truth of the facts alleged, redemption cannot be found to have occurred, leaving plaintiff without an interest in the property, a pleading deficiency fatal to both claims. Plaintiff responded, essentially, that dismissal at the pleading stage was premature because the allegations were sufficient to establish a property right or interest by way of "the substance of a redemption" that was sufficient to create a "justiciable claim for declaratory relief." She argued further, as she does now, that the allegations were sufficient to support a declaration "that [her] judgment lien continues as a lien based on [a] redemption" and that "[t]he same redemption issue applies with respect to the Fraudulent Transfer Claim."

The trial court granted the ORCP 21 A(8) motions, dismissing the declaratory judgment claim because there was "no justiciable controversy" and the fraudulent transfer claim because "plaintiff's factual allegations cannot support a finding of fraudulent transfer."

---

[1] Plaintiff filed her complaint against Aries, its principal, and its attorney. For ease of reference, we generally refer to Aries as the defendant in this opinion. We use the plural "defendants" where the context requires it.

[2] *Former* ORCP 21 A(8) was renumbered as ORCP 21 A(1)(h), effective January 1, 2022. We cite the former version, which was in effect at the relevant time, in this opinion. It allows motions to dismiss to be brought for "failure to state ultimate facts sufficient to constitute a claim."

As we will explain, the trial court's dismissal of the declaratory judgment claim was necessarily based on a determination of the underlying controversy: whether Aries redeemed the property, restoring plaintiff's lien rights. As has been our practice under similar circumstances, we review the trial court's determination for legal error and remand for the issuance of a judgment that declares the rights of the parties as outlined in our opinion. *Doe v. Medford School Dist. 549C*, 232 Or App 38, 46, 221 P3d 787 (2009). In the end, we conclude that the court did not err in determining that under the facts alleged, there was no redemption—statutory, equitable, or otherwise. Plaintiff's lien rights were, thus, not restored. We also conclude, for reasons that follow, that the trial court did not err in dismissing the fraudulent transfer claim.

## I.  STANDARD OF REVIEW

We review the grant of a motion to dismiss for legal error, assuming "the truth of all well-pleaded facts alleged in the complaint." *Hale v. State of Oregon*, 259 Or App 379, 382, 314 P3d 345 (2013), *rev den*, 354 Or 840 (2014). We state the facts in accordance with that standard.

## II.  FACTUAL & PROCEDURAL BACKGROUND

We draw the following chronology of pertinent events from the operative complaint, assuming the truth of the facts alleged:

- Plaintiff is a judgment creditor, with an unpaid judgment against Lucas, which was secured by a lien against property that Lucas owned in Sherwood.[3]

---

[3] ORS 18.150(2) provides:

"Except as provided in this section, if the court administrator notes in the register that a judgment creates a judgment lien, the judgment has the following effect in the county in which the judgment is entered:

"(a) When the judgment is entered, the judgment lien attaches to all real property of the judgment debtor in the county at that time; and

"(b) The judgment lien attaches to all real property that the judgment debtor acquires in the county at any time after the judgment is entered and before the judgment lien expires."

- February 2016 - Lucas transferred his interest in the property to his wife, Rachel Lucas, by bargain and sale deed for $0 in consideration.

- July 26, 2016 - a judgment of foreclosure was entered in favor of U.S. Bank, the senior lienholder, foreclosing the interests of Lucas and all junior lienholders in the property, including plaintiff, subject to statutory rights of redemption.

- January 23, 2017 - Rachel Lucas transferred her interest in the property to Cypress Oregon Investments, LLC (Cypress), a company she was a member of, by bargain and sale deed for $0 in consideration.

- January 25, 2017 - a foreclosure sale was held, and the property was sold to Vardon Properties, LLC (Vardon) for $353,000, subject to statutory rights of redemption. Vardon received a certificate of sale from the sheriff and became the certificate holder.

- February - March 2017 - defendants worked with John and Rachel Lucas on a plan by which Aries or one of the other defendants would provide funding to Lucas that would allow him to redeem the property under the statutory procedure and remain in possession of the property. By mid-March, defendants received an updated title report that provided information revealing to them, for the first time, a number of significant liens against the property, including plaintiff's judgment lien. At that point, defendants rejected the statutory redemption plan.

- March 2017 - John Lucas, Rachel Lucas, and Cypress transferred any and all interests they had in the property to Aries, by bargain and sale deeds, including all rights of redemption.[4] The deeds were not recorded.

---

[4] The bargain and sale deeds were attached to the operative complaint. They designated the "true and actual consideration" given by Aries in exchange for the conveyances to it of the interests in the property as "$200 and other valuable consideration, including any and all rights of redemption arising from the Sheriff's Sale on January 25, 2017, and all rights under ORS Chapter 18." Plainly read, the deeds reflect that Aries gave cash plus redemption rights for the interests it

- March 31, 2017 - Aries purchased the sheriff's certificate of sale from Vardon for $400,000, an amount that would be consistent with a redemption amount payable under ORS 18.966 (amount paid at sheriff's sale plus interest and costs). The assignment of the Sheriff's Certificate of Sale was recorded.

- March 31, 2017 - John and Rachel Lucas paid Aries $45,000 and entered into a Lease Option Agreement with Aries that provided that John and Rachel Lucas would remain in possession of the property, with an option to purchase the property in the future. The Lease Option Agreement was not recorded.

- January 30, 2018 - Aries received the sheriff's deed for the property and presently holds legal title to it.

### III.   DECLARATORY JUDGMENT CLAIM

A.  *Justiciability*

Plaintiff sought a declaration that her judgment lien "continues as a lien against" the property based on two different, but overlapping, theories of redemption. Plaintiff's first theory is that Aries purchased the interest of the foreclosure sale purchaser (Vardon) during the statutory period of redemption, and that, at that moment, that interest automatically merged with the redemption rights Aries had already purchased from the foreclosed mortgagor (Lucas), "resulting in a redemption."

Plaintiff's second theory is that a redemption should be "deemed" to have occurred because Aries "disguised itself" as if it held only the certificate of sale when, in fact, Aries also held the Lucases' potential redemption rights. According to plaintiff, by concealing its identity as a successor in interest to the mortgagor (having purchased his redemption rights), Aries improperly sidestepped the effect

---

received in the property. That is not consistent with the allegations in the complaint that allege that John Lucas, Rachel Lucas, and Cypress each transferred redemption rights to Aries. That apparent mistake in each deed goes to consideration, a key term in each. But no party raised that as an issue, and we do not address it further.

of statutory redemption under ORS 18.952(1)[5] and was then able to obtain a sheriff's deed to the property free and clear of all encumbrances, including plaintiff's lien. In plaintiff's view, given that alleged scheme, the trial court should have deemed an "equitable redemption" of the type described in *McKinnon v. Bradley*, 178 Or 45, 165 P2d 286 (1946), to have occurred, resulting in the restoration of her lien against the property.

Before turning to the merits, we must first address the posture in which the parties have presented this matter to us. Defendants filed ORCP 21 A(8) motions to dismiss for failure to state a claim and not ORCP 21 A(1) motions to dismiss for lack of subject matter jurisdiction. Defendants argue that, "[a]lthough the parties and the court used the term 'justiciable,'" the question that was argued was not whether plaintiff had sufficiently alleged a justiciable controversy, but instead concerned whether an equitable redemption as alleged by plaintiff was possible under Oregon law and, thus, whether a redemption occurred, giving plaintiff an interest in the property at issue. That, according to defendants, goes to the merits of plaintiff's claim and not to justiciability. Plaintiff briefly mentioned justiciability below when she concluded her argument in opposition to the motions by stating that the complaint supports "the substance of a redemption" that was sufficient to create a "justiciable claim for declaratory relief." Plaintiff does not specifically address justiciability on appeal.

The issue of justiciability is a question of law. Requirements of justiciability are imposed by Article VII (Amended), section 1, of the Oregon Constitution, but the legislature may impose its own such requirements. *Beck v. City of Portland*, 202 Or App 360, 363, 122 P3d 131 (2005).

---

[5] ORS 18.952, which is titled "Effect of sale on judgment debtor's or mortgagor's title; effect of redemption by judgment debtor or mortgagor" provides:

"(1) The title of a judgment debtor or mortgagor to real property that is subject to redemption under ORS 18.960 to 18.985 is not transferred by the sale of the property at an execution sale. If a judgment debtor or mortgagor, or a successor in interest to a judgment debtor or mortgagor, redeems property sold at an execution sale, the right to possession of the property is restored subject to all liens of record, whether arising before, on or after the sale, as though the sale had never occurred."

We begin with the statutory scheme governing declaratory judgment actions. *See Board of Cty. Comm. of Columbia Cty. v. Rosenblum*, 324 Or App 221, 231, 526 P3d 798 (2023) (following that approach in the context of validation proceedings). ORS 28.020 provides, as relevant here:

> "Any person interested under a deed *** or whose rights *** are affected by a *** statute, *** may have determined any question of construction or validity arising under such instrument, *** [or] statute, *** and obtain a declaration of rights, status, or other legal relations thereunder."

The Supreme Court has interpreted that provision to impose statutory justiciability requirements. *US West Communications v. City of Eugene*, 336 Or 181, 191 n 12, 81 P3d 702 (2003); *see also Beck*, 202 Or App at 364 (explaining same). The court reasoned that the use of the phrase "affected by" reflects a legislative intent to require that the dispute be based on present, rather than hypothetical, facts. *US West Communications*, 336 Or at 191. In our view, the legislature's use of the phrase "interested under"—also in the present tense and in the very same sentence—leads to the same conclusion by the same logic. ORS 28.020 imposes a justiciability requirement in declaratory judgment actions.

The purpose of the Uniform Declaratory Judgments Act (UDJA), ORS 28.010 to 28.160, "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." ORS 28.120. The UDJA is, thus, designed to prevent injustice by authorizing trial courts to settle uncertainty with respect to legal rights and relationships, but it also, by its own terms, prohibits courts from giving purely advisory opinions. The test for whether a claim for declaratory relief is justiciable is whether an "existing state of facts" threatens a plaintiff's legal rights. *Cummings Constr. v. School Dist. No. 9*, 242 Or 106, 110, 408 P2d 80 (1965).

The Supreme Court described the elements of a justiciable controversy as follows:

> "A controversy is justiciable, as opposed to abstract, where there is an actual and substantial controversy between parties having adverse legal interests. The controversy

> must involve present facts as opposed to a dispute which is based on future events of a hypothetical issue."

*Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982) (citations omitted). Justiciability, thus, requires that the dispute "involve present facts" and that it be one "in which a prevailing plaintiff can receive meaningful relief from a losing defendant." *Hale*, 259 Or App at 384. "Justiciability is a vague standard but entails several definite considerations." *Brown*, 293 Or at 449. There must be "an actual and substantial controversy between parties having adverse legal interests" and the declaratory judgment action must result in "specific relief through a binding decree as opposed to an advisory opinion which is binding on no one." *Id.*

The justiciability of a claim for declaratory relief presents a jurisdictional question regardless of whether it is raised in the context of a motion to dismiss for failure to state a claim, a motion to dismiss for lack of subject matter jurisdiction, or on the court's own motion pursuant to an independent obligation to determine the justiciability of the issues before it. *Beck*, 202 Or App at 366-68. Declaratory judgment actions are generally not the proper subject of a motion to dismiss, unless there is "want of a justiciable controversy." *Doe*, 232 Or App at 45. When the "complaint presents a justiciable controversy, a motion to dismiss under ORCP 21 A(8) should be denied." *Clark v. City of Albany*, 142 Or App 207, 212, 921 P2d 406 (1996). In fact, when the basis for the ORCP 21 A(8) motion is that the complaint does not state a justiciable controversy, the issue presented is really one directed to jurisdiction and better presented under ORCP 21 A(1). *Beck*, 202 Or App at 367-68.

We acknowledge the conundrum of deciding whether to file an ORCP 21 A(8) motion for failure to state a UDJA claim where an actual controversy based on present facts is not alleged versus an ORCP 21 A(1) motion to dismiss for lack of subject matter jurisdiction. The underlying basis for each motion is the same here. Both ask the court to dismiss the claim because there was no redemption and, therefore, plaintiff has no interest in the property. And, clearly, the trial court had to reach the merits of that argument before it

could find that there was "no justiciable controversy." As we have explained, "[t]he proper procedure" would be for defendants "to [file an] answer" and then "submit the matter to the court for a declaration as to the merits of the claim." *Doe*, 232 Or App at 46. It appears that the functional equivalent of that happened here.

This is not a case like *Waremart, Inc. v. Mathias*, 168 Or App 272, 7 P3d 538 (2000), where we affirmed dismissal of a claim for declaratory relief because, in that case, the controversy was alleged in wholly hypothetical terms: *If* a citizen sought signatures on initiative petitions on Waremart property, and *if* the state requires Waremart to permit that activity, *then* Waremart would suffer a constitutional violation. We agreed that the claim was nonjusticiable and subject to dismissal as such. *Mathias*, 168 Or App at 277. Here, plaintiff alleged that she had a valid judgment against Lucas secured by a lien against property he once owned, that there was a foreclosure sale, followed by transfers and assignments of certificates and redemption rights, and that those transfers and assignments resulted in a redemption that restored her lien rights in the property. Whether or not plaintiff is legally correct, she alleged facts that are current, real, and disputed. Given the purpose of the UDJA and our obligation to construe and administer its terms liberally, we will follow our practice of moving directly to a review of the trial court's decision on the merits in anticipation of remanding for entry of a judgment declaring the parties' rights with respect to plaintiff's lien claim.

B.  *Redemption Rights*

The legal concept that a lien will reattach to property when a judgment debtor or his grantee redeems the property is well-settled in our case law. As the Oregon Supreme Court explained long ago:

> "The lien is a quality in the judgment, inseparably connected with it, which determines the extent of the right to take the land in execution under the judgment as against adverse claims. The lien binds the title of the judgment debtor, and, until there has been a legal transmutation of that title, the lien should, apparently, continue. There is no sale in a legal sense until the title has passed.

"The execution comes as a power to seize the debtor's title and pass it to the purchaser. The lien binds the title—the ownership in the land—and having attached to the title, prevents its transfer by the debtor so as to affect the lien. It is not sufficient, to divest the lien, that the power should be partly executed by an inchoate sale. The sale is but one of the steps in the exercise of the power. The power must be fully executed, to make that change in the status of the property necessary to divest the lien. This is done by the seizure on execution and transfer of the seizin by a legal sale.

"The purchaser at the sale holds a defeasible equitable right to a conveyance of the legal title. The lien is a legal right relative to the legal title, and the purchaser's equity can only affect it as it affects that title. But the lien is suspended, because the title bound by the lien is in the grasp of the law; free the title from that grasp and the lien binds as before. Now when the grantee of the judgment debtor redeems, the process of transfer is arrested. The equitable title of the purchaser falls into the legal title in the hands of such grantee and is instantly merged. No notice can now be taken of that title. It is as if it had never existed."

*Settlemire v. Newsome*, 10 Or 446, 446-47 (1882). "During the interim between the [execution] sale and [issuance of] the [sheriff's] deed, the rights of the parties interested are measured by the statute. The sale is inchoate, and does not transfer title until consummated by the execution and delivery of the [sheriff's] deed in due course of law." *Flanders v. Aumack*, 32 Or 19, 25-26, 51 P 447 (1897). Once a sheriff's deed issues to the certificate holder, that "deed puts an end to the lien of the judgment or decree under which the sale was made, and all other liens subsequently acquired." *Id.* at 26. The "sheriff's deed cuts them off altogether." *Id.* at 25.

The legal implications of foreclosure on ownership of the encumbered property thus change as the process proceeds. Those changes flow from the process itself and depend, in particular, on whether redemption rights are exercised. When they are, title to the property remains encumbered by any unsatisfied portion of the lien foreclosed as well as any junior liens. When redemption rights are not exercised, title to the property is conveyed free and clear of all such liens. The logic of those divergent outcomes flows from the

fact that a judgment lien secures a personal obligation and thus "attaches" to real property owned by "the judgment debtor." ORS 18.150(2). Once property is sold at the sheriff's sale and the redemption period expires without redemption rights having been exercised, the property conveyed to the purchaser by the sheriff's deed is no longer property owned by the judgment debtor and, thus, cannot be used to secure the personal obligations of the judgment debtor.

There are two types of redemption: equitable and statutory. *Kerr v. Miller*, 159 Or App 613, 634, 977 P2d 438, *rev den*, 329 Or 287 (1999). Equitable redemption is a common law doctrine, now "codified at ORS 88.100, [that] exists only until the foreclosure sale[]" occurs. *Id.* Statutory redemption, on the other hand, is available for a six-month period following the foreclosure sale. It permits the defaulting debtor, the mortgagor whose interest in the property was sold at the sale, any junior lienholder, or the successor in interest of any such persons, to redeem the property within that timeframe. ORS 18.942; ORS 18.963(1)(a)-(d); ORS 18.964. The distinguishing feature between the two types of redemption is that "equitable redemption only exists until the interest is foreclosed, while statutory redemption only begins after the interest is foreclosed." *Land Associates v. Becker*, 294 Or 308, 313, 656 P2d 927 (1982).

Plaintiff did not allege below and does not argue on appeal that the property was redeemed before the foreclosure sale occurred. Plaintiff, in fact, emphasized in her reply brief that she "does not contend that Aries [] exercised its redemption rights prior to the January 25, 2017, foreclosure auction sale; that is a non-issue." Plaintiff also did not allege or argue that any party affirmatively used the statutory redemption process to redeem the property after the foreclosure sale occurred.[6] Plaintiff does allege that Aries initially

---

[6] The statutory redemption process permits a person holding redemption rights to redeem the property from the purchaser by paying to the sheriff the entire amount paid by the purchaser at the execution sale, plus interest, and some additional expenses. ORS 18.966. But the statutory process involves a number of steps that the redemptioner must take including, among others, providing notice to the certificate holder, ORS 18.970, and allowing an opportunity for the certificate holder to object to the notice and to initiate court proceedings, ORS 18.971 - 18.978. There are also a number of requirements concerning such things as the specific contents of the notice, ORS 18.970, when and how a redemptioner

planned to be a funding source for Lucas so that Lucas could redeem the property, but she also alleges that defendants abandoned that plan. As it turned out, Lucas did not redeem the property. Plaintiff makes a public policy argument that, given the facts alleged, "an equitable redemption" in "the sense" that that phrase was used in *McKinnon* should be "deemed" to have occurred.

In plaintiff's view, redemption occurred at the moment Aries held both the certificate of sale and the redemption rights because that moment occurred within the statutory six-month redemption period and because the text and context of the redemption statutes support both the automatic merger of those interests and a redemption of the property at that point in time. In addition to her public policy argument under *McKinnon*, and although plaintiff acknowledges that no party utilized the statutory redemption process, plaintiff relies on ORS 18.952(1), which is within the statutory redemption provisions, to support her position. That statute provides:

> "The title of a judgment debtor or mortgagor to real property that is subject to redemption under ORS 18.960 to 18.985 is not transferred by the sale of the property at an execution sale. If a judgment debtor or mortgagor, or a successor in interest to a judgment debtor or mortgagor, redeems property sold at an execution sale, the right to possession of the property is restored subject to all liens of record, whether arising before, on or after the sale, as though the sale had never occurred."

ORS 18.952(1).

Defendants, for their part, do not dispute that, if there was a redemption, the property would be subject to all remaining liens of record, including plaintiff's lien. Defendants' position is that there was no redemption. They point to the allegations in the complaint that Aries acquired both the rights of redemption and the certificate of sale, and they argue that Aries, as holder of both, would have been entitled to a sheriff's deed even before the redemption period expired under ORS 18.985. That statute provides:

---

advises the sheriff of certain transfers, ORS 18.982, and what happens when the property is not redeemed, ORS 18.985(1).

"(1)   Unless the property is redeemed by the judgment debtor, upon request of the certificate holder and payment of the fee required by ORS 21.300 (1)(c), the sheriff shall execute and deliver a deed for real property sold at an execution sale. The deed shall convey the property to the certificate holder. The deed shall be delivered to the certificate holder as soon as possible.

"(2)   Notwithstanding subsection (1) of this section, the court may direct the sheriff to execute a deed to a certificate holder before the expiration of the time allowed for redemption if the certificate holder establishes that the certificate holder has acquired the rights of all persons entitled to redeem."

ORS 18.985.

The parties thus seem to frame the issue as whether the complaint supports a determination that (1) there was a redemption of the property with restoration of liens of record under ORS 18.952(1) or (2) there was an acquisition of all rights of redemption by the certificate holder, who was thus entitled to a sheriff's deed under ORS 18.985. And yet as we have already mentioned, plaintiff's argument is that a different type of "equitable redemption" occurred here—a redemption of the sort described in *McKinnon*.

Defendants did not address *McKinnon* in their briefs, but, because plaintiff relies on that case to support her "equitable redemption" theory, we turn to it now. *McKinnon* is a mortgage foreclosure case filed against the mortgagor.[7] 178 Or at 47-50. There, the plaintiff alleged, among other things, that the county had foreclosed various tax liens on the defendant-mortgagor's property pursuant to statute, and that it had "procured a sheriff's deed conveying the property to [the county]" as a part of that process. *Id.* at 48. The plaintiff further alleged that the defendant-mortgagor's mother "entered into a written agreement with the county for the purchase" of the property, that she received a sheriff's deed for the property, free of all liens, and that she then assigned that agreement to defendant-mortgagor (her daughter) and

---

[7] The defendant-mortgagor in *McKinnon* was not the original mortgagor. Her interest was nevertheless such "that she might have redeemed it from the tax sale." *McKinnon*, 178 Or at 56. For ease of reference, we refer to her as "defendant-mortgagor" or "the mortgagor" in discussing *McKinnon*.

son-in-law and also "quitclaimed the premises" to them. *Id*. at 48-49. The plaintiff alleged that the defendant-mortgagor's mother acted according to a "concerted scheme for the benefit of [her daughter and son-in-law], to procure title to the mortgaged premises free of the lien of the mortgage, in defraud of plaintiffs' rights thereunder." *Id*. at 49. The court concluded that, "irrespective of whether or not [the defendant's mother] was a bona fide purchaser, the subsequent revesting of the title in a grantee of the original mortgagor worked an equitable redemption of the property for the benefit of the mortgagee, and the mortgage lien was restored." *Id*. It is in that sense that plaintiff argues we should deem an "equitable redemption" to have occurred here. But *McKinnon* is distinguishable from this case.

The defendant-mortgagor in *McKinnon* remained in possession of the property and resumed ownership of it when her mother deeded the property back to her. Indeed, it was that "revesting of the title" in the defendant-mortgagor that "worked an equitable redemption of the property." *Id*. John and Rachel Lucas remained in possession of the property in this case, but they did so under lease, not title. There was no revesting of title to the Lucases. At most, they had an option to repurchase the property in the future—which is not the same thing.

The court also noted that it was the defendant-mortgagor's mother in *McKinnon* who purchased the property at the foreclosure sale when it stated that, "[d]espite the intrusion of [defendant's mother] into the chain of title," defendant remained in possession of the property. 178 Or at 56. Whatever weight the court gave to the familial relationship between the defendant-mortgagor and the purchaser in the context of the reconveyance, the presence of that relationship did not go unnoticed, and it distinguishes *McKinnon* from the case before us. The complaint in this case alleges only that Aries is a holding company, that it had considered providing funding to Lucas to allow Lucas to redeem, and that it purchased Vardon's certificate of sale and John and Rachel Lucas's redemption rights. There is no information about the existence or nature of the relationship between Aries and Lucas. Certainly, there is nothing to suggest a family relationship.

We do not perceive the court's use of the phrase "equitable redemption" in *McKinnon* to have altered the historically defined limits of equitable redemption. The extent to which the family relationship played a role in "work[ing] an equitable redemption" in *McKinnon* is not clear, but we think it important to note that the court later reaffirmed that equitable redemption can only occur before a foreclosure sale takes place. *Land Associates*, 294 Or at 313. *McKinnon* does not support equitable redemption in this case.

We also reject plaintiff's argument that redemption automatically occurred when Aries, as assignee of the Lucases' existing redemption rights, acquired the certificate of sale, because that argument is in direct conflict with ORS 18.985, which permits a certificate holder who has obtained all rights of redemption to obtain a sheriff's deed before the statutory redemption period expires. And we reject plaintiff's argument that Aries cannot be a certificate holder under ORS 18.960(1) simply because it was not the original purchaser at the foreclosure sale. "Certificate holder" is defined in ORS 18.960(1) as "a person who holds a certificate of sale issued under ORS 18.942 or who holds a certificate of redemption issued under ORS 18.975." The statute does not say, and there is no requirement, that the holder be the original certificate holder. Sheriff's certificates of sale are certainly transferable. *See* ORS 93.530 (requires all sheriffs' certificates of sale to be executed, acknowledged, and recorded in the same manner as deeds of real property); *National Surety Corp. v. Smith*, 168 Or 265, 268, 114 P2d 118 (1941), *aff'd on reh'g*, 168 Or 265 (1942) (assignee of sheriff's certificate of sale received sheriff's deed).

Plaintiff asserts that the legislature intended the statutory redemption process to prevent the kind of conduct alleged here. The crux of that argument is that Aries wrongfully obtained clear title to the property through "identity concealment"—a result it could not have obtained "through an open and honest statutory redemption of the property." Plaintiff relies on *Newman v. American National Bank*, 780 P2d 336 (Wyo 1989), but that reliance is misplaced. We are not bound by decisions of the Wyoming Supreme Court. And, in any event, the factual allegations before us are different than the facts that were before the Wyoming court.

In *Newman*, the original mortgagor acquired the certificate of sale himself after the property liens had been eliminated by foreclosure. 780 P2d at 340. Here, Lucas did not acquire the certificate of sale. He has no legal interest in the property beyond that of a tenant. That distinction is important because it was the potential for the mortgagor to eliminate junior liens by purchasing the certificate of sale that the Wyoming court concluded provided a "solid basis" for revival of the junior lien. *Id.*

Aries decided not to redeem the property. Aries was entitled to make that decision.[8] There was no redemption and, therefore, plaintiff's lien rights were not restored. She has no right or interest in the property.

Accordingly, as to plaintiff's first assignment of error, we conclude that the court erred in dismissing plaintiff's claim for declaratory judgment, and we vacate and remand for the court to enter a judgment declaring that plaintiff has no right or interest in the property.

## IV.   FRAUDULENT TRANSFER CLAIM

Plaintiff's second assignment of error challenges the trial court's ruling dismissing her second claim for relief in which she sought damages based on a legal theory of fraudulent transfer. She alleged that the transfers of Lucas's redemption rights by Lucas and his wife to Aries were fraudulently made with the intent to hinder, delay, or defraud creditors of Lucas, including plaintiff. Plaintiff argues that the trial court incorrectly concluded that her "factual allegations cannot support a finding of a fraudulent transfer."

Plaintiff argues that the ultimate facts alleged in her complaint are sufficient to proceed on a fraudulent transfer theory because they show that Aries "leveraged" its ownership of Lucas's redemption rights in order to negotiate a price for Vardon's certificate of sale that was less than the fair market value of the property. Vardon paid $353,000 for the certificate of sale that it bought at the foreclosure sale

---

[8]  Although not raised as an issue by the parties, we note that plaintiff appears to have had redemption rights as a junior lienholder under ORS 18.963(1)(c) and that she likewise chose not to exercise those rights.

and then sold that certificate to Aries for $400,000. Plaintiff argues that if Aries had approached Vardon after the expiration of the statutory redemption period, the property would have been sold for more and that Aries received an unfair amount of equity in the property.

Plaintiff argues that, when Lucas and his grantees, Rachel Lucas and Cypress, transferred any and all of their redemption rights to Aries, they did so as part of a "redemption identity theft scheme" that constitutes a fraudulent transfer under the Uniform Fraudulent Transfer Act (UFTA), ORS 95.200 to 95.310. The UFTA defines a transfer as "fraudulent" if "the debtor made the transfer *** [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor ***." ORS 95.230(1)(a). ORS 95.230(2) provides a nonexclusive list of factors that the court may consider as it determines whether a transfer was fraudulent.[9]

The allegedly fraudulent transfers were from John Lucas to Aries, Rachel Lucas to Aries, and Cypress to Aries. We have reviewed the operative complaint, and we have considered the allegations of ultimate fact in light of the statutory factors. There is no allegation that the transfers

_____

[9] ORS 95.230 provides, as relevant:

"(2) In determining actual intent under subsection (1)(a) of this section, consideration may be given, among other factors, to whether:

"(a) The transfer or obligation was to an insider;

"(b) The debtor had retained possession or control of the property transferred after the transfer;

"(c) The transfer or obligation was disclosed or concealed;

"(d) Before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit;

"(e) The transfer was of substantially all the debtor's assets;

"(f) The debtor had absconded;

"(g) The debtor had removed or concealed assets;

"(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

"(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

"(j) The transfer had occurred shortly before or shortly after a substantial debt was incurred; and

"(k) The debtor had transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor."

were "to an insider." As we have already mentioned, Aries is alleged to be an Oregon limited liability company. But there are no allegations that there was an "insider" relationship between Lucas and Aries.[10] And while it is alleged that Lucas retained possession of the property, he did so under a lease agreement as a tenant and not as an owner. *See Stach v. Jackson*, 40 Or App 249, 253-54, 594 P2d 1289 (1979) (in a somewhat different context, in determining whether a debtor had an intent to hinder, delay, or defraud a creditor in the conveyance of real property, the fact that the debtor retained an option to purchase in a lease with the new property owner was not regarded as evidence of a fraud). Other than alleging that the thing that was transferred—Lucas's redemption right—was "valuable," the complaint does not contain any factual allegations to support what that value might be. It is alleged that the deeds used to transfer the redemption rights were not recorded, and that the assignment of the certificate of sale from Vardon to Aries was recorded, and that those facts resulted in a "collusive foreclosure sale." Plaintiff points to no requirement that the deeds conveying redemption rights be recorded when they are conveyed. And without any allegation that there was an insider relationship between Lucas and Aries, it is difficult to see how the transfers were fraudulent under the UFTA. The trial court did not err in its determination that the allegations of plaintiff's second claim for relief do not support a determination that the transfers were fraudulent.

As to plaintiff's claim for declaratory relief, vacated and remanded for entry of judgment declaring the rights of the parties; otherwise affirmed.

---

[10] ORS 95.200(7)(a) defines an "insider" (if the debtor is an individual) as follows:

"(A) A relative of the debtor or of a general partner of the debtor;

"(B) A partnership in which the debtor is a general partner;

"(C) A general partner in a partnership described in subparagraph (B) of this paragraph; or

"(D) A corporation of which the debtor is a director, officer or person in control."